**Steve F. GRESH, Plaintiff–Appellant,**

**v.**

**Robert BALINK, El Paso County Clerk and Recorder, in his official capacity, and El Paso County, Defendants–Appellees.**

No. 05CA0375.

Colorado Court of Appeals, Div. IV.

Oct. 5, 2006.

Steve F. Gresh, pro se.

William Louis, County Attorney, Jay A. Lauer, Assistant County Attorney, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge CASEBOLT.

In this election ballot case, plaintiff, Steve F. Gresh, appeals the judgment denying his request for declaratory and injunctive relief and dismissing his complaint against defendants, the County of El Paso and Robert Balink, in his official capacity as the El Paso County Clerk & Recorder. We affirm.

This case involves a ballot issue notice under the Taxpayers Bill of Rights (TABOR), Colo. Const. art. X, § 20. Under TABOR, when any proposal for a tax increase is placed on the ballot, a notice must be sent to registered voters summarizing arguments for and against the proposal. The notice must include two summaries of voter comments, up to 500 words each, one for and one against the proposal. The election official in charge of the election compiles and must accurately summarize "all . . . relevant written comments." *See* Colo. Const. art. X, § 20(3)(b)(v).

The issue in this case involves El Paso County Question 1A, a 2004 ballot proposal to establish a Rural Transportation Authority

and to authorize a tax increase for highway maintenance, improvements, and transit funding. Balink was the official responsible for summarizing the comments for and against County Question 1A that were included in the ballot issue notice sent to registered voters.

Before the election, plaintiff filed this action seeking declaratory and injunctive relief. He alleged that a supporter of the measure had tendered "fraudulent, dishonest, counterproductive and malicious statements" purporting to oppose the measure and that such statements were "meant as sabotage to undermine the credibility of the opponents, to antagonize readers into supporting the measure by the use of absurd, phony, contradictory comments against it, and to preempt part of the 500 words" that opponents were allotted. He asserted that the supporter had acted in bad faith in tendering the comments.

Plaintiff also asserted that Balink was required to accurately summarize written comments, but only if such comments were "relevant," and that comments submitted by the person who supported the measure disguised as opposition to it failed to meet that requirement. Plaintiff requested that certain of those comments be deleted from the summary against the proposal, and that the court define "relevant" comments in § 20(3)(b)(v) so as to preclude Balink and other election officials from including in future ballot issue notices comments purporting to support one side of a proposal that were in fact made by voters who supported the other side. The comments to which plaintiff objected stated:

If we fix the congestion problem, more employers will want to move here and that will just make our growth problems worse. There is too little of the money going to mass transit.

We should be discouraging people from driving rather than encouraging them. As the roads are more congested, people will move closer to their jobs, travel less, and when they do, they will be more likely to walk or use a bicycle.

Instead of funding more road projects so that more people drive and pollution is increased, we should begin building a light rail system throughout the city.

The city and county should be spending much more money encouraging people to use the bus and carpool.

This measure will not make our roads safer. Congestion may cause more fender benders, but it reduces the number of high speed accidents.

Defendants moved to dismiss the complaint for failure to state a claim on which relief can be granted, failure to join a necessary party, lack of standing, and mootness, noting that the comments in the election summary had already been printed and mailed to voters. Plaintiff filed a response to the motion after the election had occurred.

The trial court ruled that the case was moot because the election had already occurred, rejecting plaintiff's argument that the controversy would occur again. This appeal followed.

## I. Mootness

█ Plaintiff asserts that the trial court erred in ruling that this case was moot because it presents a controversy capable of repetition, yet evading review. We agree that one of the issues framed for declaratory relief is not moot.

█ A case is moot when the relief sought, if granted, would have no practical legal effect on the controversy. *Crowe v. Wheeler,* 165 Colo. 289, 439 P.2d 50 (1968)(issues specific to an election are rendered moot once the election has been held); *Bruce v. City of Colorado Springs,* 971 P.2d 679 (Colo.App.1998)(same). If the conduct sought to be redressed is peculiar to a particular election, the occurrence of the election itself will moot the controversy. *W–470 Concerned Citizens v. W–470 Highway Auth.,* 809 P.2d 1041 (Colo.App.1990) (holding of referendum election rendered moot declaratory judgment action based on allegations concerning distribution of brochures about the election issue).

█ Generally, courts will decline to consider the merits of a case that is moot. *Colo. Dep't of Corr. ex rel. Miller v. Madison,* 85 P.3d 542 (Colo.2004); *In re Marriage of Balanson,* 25 P.3d 28 (Colo.2001). However,

under two exceptions to the mootness doctrine, courts may consider the merits when the matter involves a question of great public importance, or the issue is capable of repetition, yet evades review. *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50 (Colo.2003); *Bd. of County Comm'rs v. Crystal Creek Homeowners Ass'n,* 14 P.3d 325 (Colo.2000); *Bruce v. City of Colorado Springs, supra.*

Here, plaintiff contends the situation in which an election official improperly includes comments in opposition to the proposal made in bad faith by a proposal supporter has occurred numerous times and will continue to occur in the future if left unchecked. He therefore asserts the case is not moot.

Recently, a division of this court faced the issue of a ballot issue notice allegedly tainted in this way. *See Taxpayers Against Congestion v. Reg'l Transp. Dist.,* 140 P.3d 343 (Colo.App.2006). In *Taxpayers,* as here, the plaintiff filed an action for declaratory and injunctive relief alleging that the defendant, a regional governmental entity responsible for printing and mailing ballot issue notices, failed to summarize accurately the comments for and against the proposal by including comments against the proposal made by a supporter masquerading as an opponent.

The trial court had ruled that the First Amendment does not allow courts to pass judgment on the content of political speech based on the purported motives of the speaker and dismissed the case. On appeal, a division of this court held that the case was moot because the election had proceeded with the allegedly tainted ballot issue notice and the proposal had passed. The division did not consider the two exceptions to the mootness doctrine noted above because the plaintiff did not argue that such exceptions applied.

Although we are unaware of other cases addressing ballot issue notices allegedly tainted in this way, we conclude that the question whether an election official must include comments in opposition to the proposal made in bad faith by a proposal supporter is capable of repetition, yet could evade review, because of the short time between the collection of comments, the issuance of ballot notices, and the elections to which they relate. Accordingly, we agree with plaintiff that the portion of his case requesting a declaratory judgment on this issue is not moot.

■ However, the request for declaratory and injunctive relief as to the statements related to the specific transportation issue involved in the 2004 election is now moot because that election has been concluded. *See W–470 Concerned Citizens v. W–470 Highway Auth., supra.*

## II. Declaratory Relief

■ Notwithstanding that one issue is not moot, we nevertheless conclude that plaintiff is not entitled to the declaratory relief he seeks.

Actions for declaratory judgment are meant to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. Section 13–51–102, C.R.S.2006; *Cacioppo v. Eagle County Sch. Dist. Re–50J,* 92 P.3d 453 (Colo.2004); *Farmers Ins. Exch. v. Dist. Court,* 862 P.2d 944 (Colo.1993).

■ A court has discretion to determine whether to permit a declaratory judgment action. *See Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 561 (Colo.1996). A court may refuse to render a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding. Section 13–51–110, C.R.S.2006; *see Colo. Common Cause v. Bledsoe,* 810 P.2d 201, 214 (Colo.1991)(Vollack, J., concurring in part and dissenting in part); *People ex. rel. Inter–Church Temperance Movement v. Baker,* 133 Colo. 398, 297 P.2d 273 (1956)(court should decline to render a declaratory judgment where the judgment will not serve a useful purpose by clarifying the legal relations at issue).

Here, plaintiff requests that we define the term "relevant" in Colo. Const. art. X, § 20(3)(b)(v), which requires:

> Two summaries, up to 500 words each, one for and one against the proposal, of written comments filed with the election officer by 45 days before the election. No summary shall mention names of persons or private

groups, nor any endorsements of or resolutions against the proposal. Petition representatives following these rules shall write this summary for their petition. The election officer shall maintain and accurately summarize all other relevant written comments.

The plain and commonly understood meaning of "relevant" is that which rationally tends to persuade persons of the probability of an alleged fact. *See* CRE 401; *Webster's Third New International Dictionary* 1917 (1976) (relevant means bearing upon or properly applying to the matter at hand; affording evidence tending to prove or disprove the matter at issue); *Black's Law Dictionary* 1293 (8th ed.2004). However, defining the term "relevant" in this provision does not clarify or answer plaintiff's question or terminate the uncertainty and controversy giving rise to this proceeding.

Plaintiff contends that a comment submitted against a proposal made by a voter who is, in reality, in favor of it is irrelevant. However, particularly in the context of political ideas, proposals, and debate, comments that are persuasive to one individual may have exactly the opposite effect on another voter, and the identity of the author of the comment may or may not have an effect upon its persuasiveness. Moreover, the word "relevant" does not even remotely lend itself to imposing a requirement upon election officials to examine the motives or good faith of voters submitting comments to verify whether they in fact support the side for which their comments are submitted or, instead, aim to undermine the credibility of their opponents.

Indeed, plaintiff's argument that the content of certain comments does not rationally tend to persuade voters to support that side is inextricably tied to his or the election official's asserted knowledge of the "true" viewpoint of the voter who submits them. However, a voter's intent in submitting a comment that does not actually represent his or her views speaks to the credibility of the voter, not the relevance of the comment.

Moreover, requiring election officials to examine voters' good faith and motives in submitting comments on a proposal would present significant freedom of speech concerns with respect to the voters' right to submit comments, and could frustrate the purpose of the ballot issue notice by depriving the electorate of comments necessary to make an intelligent decision on a proposal. *See Bruce v. City of Colorado Springs,* 129 P.3d 988, 995 (Colo.2006) (the primary purpose of the TABOR ballot issue notice provisions is to provide the electorate with the information necessary to make an intelligent decision on ballot issues involving debt or tax increases).

We recognize that statements purporting to support a position may actually undermine it because they are silly, illogical, or bereft of probative force. We also recognize that a citizen may submit such a supporting statement in a tactical effort to undermine a position that the citizen actually opposes. And we acknowledge that this type of statement not only makes the task of drafting ballot notices more difficult, but it may also influence voters.

Nonetheless, we simply do not have the power or ability to solve these problems. The constitutional term "relevant" is not so broad as to address such situations. We can only apply the plain and ordinary meaning of that term and cannot infuse it with new meanings, regardless of the desirability of addressing a perceived problem. *See People ex rel. Salazar v. Davidson,* 79 P.3d 1221, 1243 (Colo.2003) (Kourlis, J., dissenting) (courts cannot be lawmakers; courts do not create laws; they interpret laws and declare what the law is and what it requires); *see also Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962)(nonjusticiable political questions include those that lack judicially discoverable and manageable standards for resolving them).

We can interpret the constitutional provision, which is a function at the very core of the judicial role. *See Colo. Common Cause v. Bledsoe, supra.* But interpretation cannot solve the lack of clarity or definition in the constitutional provision itself. Instead, that uncertainty is for the General Assembly to elucidate with implementing language or, ultimately, for the voting public to ameliorate by amending the constitutional provision.

See *Principal Mut. Life Ins. Co. v. Progressive Mountain Ins. Co.,* 1 P.3d 250 (Colo. App.1999)(it is for the General Assembly to balance competing goals; however unfortunate the result may appear in some circumstances, courts cannot supply a right or remedy the General Assembly has chosen not to provide), *aff'd,* 27 P.3d 343 (Colo.2001).

For these reasons, plaintiff is not entitled to a declaratory judgment requiring that Balink and other election officials consider or discern the good faith or motives of persons who may submit comments for or against proposals in determining whether they are relevant under TABOR.

The judgment is affirmed.

Judge CARPARELLI and Judge J. JONES concur.